UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXEI PLESTSOV, DENIS NAZAROV, and ROMAN KALABAYDA, | |
| Plaintiffs, | No. 20 CV 1847 |
| v. | Judge Manish S. Shah |
| GTS TRANSPORTATION CORP. and TOMAS STIRBYS, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

After their complaint was dismissed, plaintiffs Roman Kalabayda, Alexei Plestsov, and Denis Nazarov filed an amended complaint against GTS Transportation Corporation and its owner, Tomas Stirbys, alleging violations of the Illinois Wage Payment and Collection Act and unjust enrichment and quantum meruit in the alternative. For the reasons stated below, the defendants' second motion to dismiss is granted in part, denied in part.

I.  Facts

Roman Kalabayda, Alexei Plestsov, and Denis Nazarov worked as truck drivers for GTS Transportation Corporation, a company owned and operated by Tomas Stirbys. [22] ¶¶ 1, 13, 32, 49, 67.[1] All three plaintiffs had similar hiring

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of filings. At the motion to dismiss stage, I accept the plaintiffs' factual allegations as true and draw all reasonable inferences in their favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.*

experiences. [22] ¶¶ 33, 51, 68. Stirbys and another GTS employee interviewed Kalabayda. [22] ¶ 69. Stirbys orally offered Kalabayda a job, where he would be paid based on a percentage of the dollar amount of the freight/load confirmations from brokers and customers, minus fuel and other expenses. [22] ¶¶ 10, 69. Stirbys orally stated other terms about control, like Kalabayda could only operate GTS trucks, could not work for another company, and had to comply with all of GTS's instructions for deliveries. [22] ¶¶ 70–72. Kalabayda was required to sign a document on the spot, which he did not understand due to his lack of English proficiency and legal knowledge. [22] ¶¶ 74, 86. Kalabayda accepted the job offer. [22] ¶ 73. Later, on at least three occasions, Kalabayda learned from GTS brokers and staff that the dollar amount on the original freight/load confirmations differed from the confirmations he received, resulting in an underpayment of approximately 10 percent. [22] ¶ 80. In one instance, Kalabayda was able to verify the underpayment because he received an original confirmation from a broker and compared it to the confirmation GTS provided him for the same load. [22] ¶ 80. Consequently, the plaintiffs allege that GTS forged the confirmations presented to Kalabayda, which lowered his pay, and that the total amount of underpayment is unknown because the original freight/load confirmations are in GTS's possession and control. [22] ¶ 79.

A GTS employee who interviewed Kalabayda interviewed Plestsov, along with another GTS employee. [22] ¶¶ 34, 69. At Stirbys's direction, the GTS employees orally offered Plestsov a job, where he would be paid a percentage of the dollar amount of the freight/load confirmations from brokers and customers, minus fuel and other

expenses. [22] ¶¶ 8, 34, 101. One of the GTS employees orally stated the same terms about control, and Plestsov signed a document that he did not understand. [22] ¶¶ 34–37, 39, 86. Plestsov accepted the offer but eventually learned from other drivers, including Kalabayda, that GTS allegedly forged the freight/load confirmations, which lowered his pay by approximately 10 percent. [22] ¶¶ 38, 43, 48. Similarly, another GTS manager, at Stirbys's direction, orally offered Nazarov a truck driver position. [22] ¶¶ 9, 52. Nazarov would be paid per mile, including layovers and extra stops, and subject to the same terms about control. [22] ¶¶ 51–55, 60, 101. Like the others, Nazarov signed a document that he did not understand and accepted the job offer. [22] ¶¶ 56–57, 86. Nazarov alleges that he too was underpaid by approximately 10 percent because GTS paid him using a "zip code to zip code" formula instead of calculating the actual miles he drove. [22] ¶ 62.[2]

GTS also took deductions from the plaintiffs' paychecks, which they never agreed to. [22] ¶¶ 1, 7. GTS withheld a total of $17,096.90 from Kalabayda's pay for "escrow," "repairs," "claims," and a "ticket"; $3,797.20 from Plestsov's pay for "escrow," "repairs," and an "Uber"; and $520 for a "cash advance" and "insurance escrow" from Nazarov's pay. [22] ¶¶ 41, 59, 76.[3] GTS never reimbursed Kalabayda and Plestsov for $52,000 and $17,181.52, respectively, for operational expenses, or Nazarov for a new GPS, tire gauge, and repair tools. [22] ¶¶ 42, 61, 77. Finally, GTS

---

[2] According to the plaintiffs, GTS allegedly "doctored" the logbooks, forcing the drivers to comply under threat of termination. [22] ¶ 3.

[3] Nazarov alleges any cash advance was spent on truck maintenance and operational needs. [22] ¶ 59. The plaintiffs also allege that the cost of insurance policies was passed onto drivers via deductions from their pay. [22] ¶ 92.

failed to pay Plestsov approximately $3,000.61 for his last two weeks at work and never paid Nazarov for any layovers and extra stops, as promised. [22] ¶¶ 36, 44, 60. GTS also returned the $1,000 it took for "escrow" at the time of Nazarov's hiring 24 weeks later. [22] ¶ 60. In total, the plaintiffs allege that the defendants owe at least $65,532.88 to Kalabayda, $29,734.74 to Plestsov, and $6,467.37 to Nazarov. [22] ¶¶ 47, 66, 82.

The plaintiffs broadly allege that the defendants took advantage of immigrant workers, and that at Stirbys's direction, GTS doctored freight/load confirmations to lower their drivers' pay, took improper deductions, and misclassified drivers as independent contractors. [22] ¶¶ 1, 3–5, 7, 13, 95, 100, 103–106. The plaintiffs also allege that GTS failed to withhold payroll and social security taxes; provide health insurance for its drivers; or make contributions to unemployment insurance or workmen's compensation. [22] ¶ 96. The defendants filed a motion to dismiss the plaintiffs' first class action complaint based on lack of jurisdiction and failure to state a claim for equitable remedies, [16], which I granted. [21]. The plaintiffs filed an amended complaint, realleging violations of the Illinois Wage Payment and Collection Act and in the alternative, unjust enrichment and quantum meruit. [22]. The defendants now seek to dismiss both claims on the merits. [27].

## II. Analysis

To state a claim under the Illinois Wage Payment and Collection Act, employees must allege that they are owed compensation pursuant to an employment contract or agreement between the two parties and that the defendants were

4

"employers" under the IWPCA. *Osorio v. The Tile Shop, LLC*, 939 F.3d 847, 850 (7th Cir. 2019) (citing 820 ILCS § 115/2).[4] The statute provides a remedy for various types of wage violations. 820 ILCS § 115/14. It requires employers to notify employees of the rate of pay at the time of hiring (in writing whenever possible), which both parties must acknowledge. 820 ILCS § 115/10. Employers must also notify employees of any changes in the arrangements before a change. *Id.* The IWPCA requires employers to pay employee wages in full and in a timely manner, including an employee's final paycheck. 820 ILCS §§ 115/3–5. The IWPCA prohibits employers from taking improper deductions from an employee's wages, like deductions made outside of a valid wage assignment or deductions made without the employee's consent. 820 ILCS § 115/9. Employers must also reimburse employees for all necessary expenditures incurred within the scope of employment and directly related to services performed for the employer's benefit. 820 ILCS § 115/9.5.

Normally, to state a claim, a complaint need only contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). However, when a complaint alleges fraud, a heightened pleading standard applies. Fed. R. Civ. P. 9(b); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (the complaint must state with particularity the circumstances constituting fraud, which means describing the who, what, when,

---

[4] Officers of a corporation who knowingly permit violations of the IWPCA are deemed to be "employers" under the Act. *See* 820 ILCS § 115/13.

5

where, and how of the misconduct). This heightened standard ensures that fraud claims are well supported and brought responsibly, since allegations of fraud risk great reputational harm to businesses. *Id*. The precise level of detail required depends on the facts of the case. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (warning courts not to take an overly rigid view of the particularity requirement). Rule 9(b) applies to all "averments of fraud or mistake," which means a heightened pleading standard may apply whenever a claim is premised on allegations of a fraudulent course of conduct, regardless of whether the plaintiffs bring a fraud claim. *Borsellino*, 477 F.3d at 507 (quoting Fed. R. Civ. P. 9(b)).[5] If a claim is based on both fraudulent and nonfraudulent conduct, Rule 9(b) only applies to the allegations of fraud. *See Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003).[6]

The defendants argue that the plaintiffs' entire IWPCA claim "sounds in fraud," and therefore should be dismissed because the allegations fail to meet the heightened pleading requirements of Rule 9(b). But the plaintiffs allege wage violations that are independent of their allegations about doctored wages and fraudulent misclassification of employees. GTS failed to pay Nazarov for any layovers and extra stops or pay Plestsov his final paycheck. [22] ¶¶ 36, 44, 60. It took GTS 24 weeks to return "escrow" money it took from Nazarov. [22] ¶ 60. GTS also took

---

[5] The who, what, when, where, and how requirement is not limited to claims of fraudulent misrepresentation, which the plaintiffs seem to suggest. *See* [30] at 2, n.1.

[6] "The proper route is to *disregard* averments of fraud not meeting Rule 9(b)'s standard." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (citation and quotation omitted).

6

random and authorized deductions from their paychecks, for expenses like "escrow" and "repairs," and never reimbursed Kalabayda and Plestsov for operational expenses, or Nazarov for truck equipment. [22] ¶¶ 1, 7, 41–42, 59, 61 76–77. None of these allegations involve fraudulent conduct. *See Majewski v. Gallina*, 17 Ill.2d 92, 99 (1959) (generally, fraud means "anything calculated to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another").[7] The plaintiffs successfully state IWPCA claims that are not subject to the heightened pleading standard for averments of fraud.

The plaintiffs do aver that GTS forged freight/load confirmations, "doctored" logbooks, and systematically misclassified drivers as independent contractors, [22] ¶¶ 1, 3–5, 7, 13, 43, 48, 62 79–80, 95, 100, 103–106, in violation of the IWPCA's requirement that employers must pay their employees' wages in full. *See* 820 ILCS §§ 115/2, 10. These allegations are acts of deception. However, just because the complaint includes averments of fraud does not mean that the plaintiffs' IWPCA claim is premised on a fraudulent course of conduct that would trigger the heightened pleading standard under Rule 9(b). *See Borsellino*, 477 F.3d at 507. Violations of the IWPCA are akin to breach of contract actions. *McCleary v. Wells Fargo Securities, L.L.C.*, 2015 IL App (1st) 141287, ¶ 29 (citations and quotations omitted). All the plaintiffs need to allege is that they are owed compensation pursuant to an

---

[7] Plaintiffs also state that they allege these IWPCA violations "in addition to being misclassified," not because they were misclassified. [22] at 3.

7

employment contract or agreement. *Osorio*, 939 F.3d at 850 (820 ILCS § 115/2). Here, the alleged fraud explains why the plaintiffs were underpaid but is not the basis of their IWPCA claim, which is that the plaintiffs are owed compensation (for whatever reason). These allegations do not amount to the kind of fraud that the heightened pleading standard under Rule 9(b) applies to.[8]

The plaintiffs replead unjust enrichment and quantum meruit in the alternative. *See* Fed. R. Civ. P. 8(d) (plaintiffs may bring inconsistent claims at the pleading stage). Unjust enrichment and quantum meruit are quasi-contract causes of action, meaning there is no actual agreement between the parties, but the court imposes a contract "implied in law" in order to provide justice to the plaintiff for conferring a benefit upon the defendant. *Hayes Mech., Inc. v. First Indus., L.P.*, 351 Ill.App.3d 1, 8–9 (1st Dist. 2004).[9] In other words, these equitable remedies apply to situations involving implied in law contracts, invalid contracts, or claims that fall outside contracts. *See id.*

I previously dismissed the plaintiffs' claims based on unjust enrichment and quantum meruit because they incorporated their allegations of a valid agreement into their equitable claims. [21] at 8. The amended complaint does it too. *See* [22] ¶ 125

---

[8] In their argument about equitable remedies, the defendants appear to concede that the plaintiffs' IWPCA claim "is in essence a breach of contract claim." [31] at 6.

[9] Here, the plaintiffs allege that the defendants were unjustly enriched because the defendants mischaracterized the plaintiffs as independent contractors, forcing truck drivers to pay substantial sums of money for work-related expenses, including costs for equipment, occupational insurance, truck maintenance and repair, and fuel. [22] ¶ 126. The defendants also unjustly benefited from not having to pay worker's compensation insurance or employee health insurance. [22] ¶ 127.

(incorporating their allegations about oral agreements into their equitable claims). These oral agreements were express agreements that governed the plaintiffs' wages and the defendants' control over the plaintiffs, [22] ¶¶ 34–37, 51–55, 60, 69–72, 101, and thus concern the same subject matter that the plaintiffs raise in their equitable claims. *See Zadrozny v. City Colleges of Chicago*, 220 Ill.App.3d 290, 295 (1st Dist. 1991) ("No claim on a contract implied in law can be asserted if an express contract or a contract implied in fact exists between the parties and concerns the same subject matter.").[10] Therefore, the plaintiffs cannot show that their equitable claims fall outside the terms of the employee agreements. The plaintiffs emphasize that these were oral agreements, not contracts.[11] But this distinction doesn't matter because a contract implied in law must exist "independent of any agreement or consent of the parties." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 500 (2001). Here, agreements existed between the parties, and agreements under the IWCPA are akin to breach of contract actions. *See McCleary*, 2015 IL App (1st) 141287, ¶ 29. Equitable remedies are "not available where there is an adequate remedy at law." *Newton v. Aitken*, 260 Ill.App.3d 717, 720 (2nd Dist. 1994).

---

[10] An implied in fact contract—as opposed to a contract implied in law—is like an express contract, except that it is inferred from the facts and conduct of the parties, rather than from an oral or written agreement. *BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, ¶ 52.

[11] The concept of an employment agreement under the IWPCA is "broader than a contract" and "requires only a manifestation of mutual assent." *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249 (1st Dist. 2004). However, as alleged, these oral "agreements" appear to be valid contracts because for each plaintiff, there was an offer, acceptance, and consideration. [22] ¶¶ 34, 38, 52, 56, 69, 73; *see Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 151 (2006) (listing elements of a contract); *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, ¶ 21 (mutual promises constitute consideration).

Finally, the plaintiffs argue that it is premature to dismiss their equitable claims and seek leave to amend their complaint to allege their equitable claims "in the event the court finds no valid employment agreement between the parties." [30] at 13, n.6; *see Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir.2000) (claims in the alternative take the form of "either-or" or "if-then"). The plaintiffs had their chance to clearly delineate between misconduct based on a valid agreement and misconduct that falls outside a contract. *See* [21] at 8, n.8. Their request is denied. *See Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009) (district courts have broad discretion to deny leave to amend where there is repeated failure to cure deficiencies).[12]

### III. Conclusion

The defendants' motion to dismiss, [27], is granted in part, denied in part. The plaintiffs' equitable claims are dismissed with prejudice. Defendants shall answer the amended complaint by March 5, 2021, and the parties shall file a joint status report with a proposed discovery schedule on March 12, 2021.

ENTER:

                                                   Manish S. Shah
                                                   United States District Judge

Date: February 12, 2021

---

[12] I do not reach the issue of whether unjust enrichment provides an independent cause of action under Illinois law. *See, e.g., Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).